UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| vs. | |
| D'LINE LOGISTICS, INC., MATTHEW G. HUNTLEY, as Special Administrator of the Estate of Ravi Dyer, and DANIEL DYER, | |
| Defendants. | |

16 C 6966

Judge Gary Feinerman

### MEMORANDUM OPINION AND ORDER

Occidental Fire & Casualty Company of North Carolina seeks in this coverage suit a declaration that it has no duty to defend or indemnify D'Line Logistics, Inc. or Matthew G. Huntley, the special administrator of the Estate of Ravi Dyer ("the Estate"), in a tort case brought by Ravi's son, Daniel Dyer, in Nevada state court. Doc. 1. D'Line did not appear and has been defaulted. Doc. 40. Occidental has moved for summary judgment against the Estate and Daniel, and the Estate has moved for summary judgment against Occidental. Docs. 41, 45. Daniel, who as the plaintiff in the Nevada case is a necessary party in this suit, *see Great W. Cas. Co. v. Mayorga*, 342 F.3d 816, 817 (7th Cir. 2003); *M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809, 811 (Ill. 1977), has neither moved for summary judgment himself nor opposed Occidental's motion. Occidental's motion is granted, and the Estate's motion is denied.

### Background

Because the court will grant summary judgment to Occidental, the facts are set forth as favorably to the Estate and Daniel as the record and Local Rule 56.1 permit. *See Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014). Neither the Estate nor Daniel filed a

1

Local Rule 56.1(b)(3)(B) response to Occidental's Local Rule 56.1(a)(3) statement, Doc. 46, or a Local Rule 56.1(a)(3) reply to Occidental's Local Rule 56.1(b)(3)(C) statement, Doc. 51 at 5-6, so the factual assertions in Occidental's statements are deemed admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). The court assumes the truth of those facts for purposes of summary judgment, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015). All that said, the relevant facts are undisputed.

On June 10, 2013, Ravi Dyer sustained fatal injuries in a traffic accident in Nevada. Doc. 46 at ¶¶ 8, 13; Doc. 51 at pp. 1-2 ¶ 1. Ravi was hauling cargo on behalf of D'Line, a motor carrier, in a truck leased to D'Line. Doc. 46 at ¶¶ 9-12; Doc. 51 at pp. 1-2, 4-5 ¶¶ 1-3, 10. Daniel, Ravi's son, was a passenger in the truck and injured in the accident. Doc. 46 at ¶¶ 9, 14; Doc. 51 at pp. 1-2 ¶ 1.

At the time of the accident, D'Line had a commercial auto policy with Occidental; the policy identifies D'Line as the only "named insured." Doc. 46 at ¶ 21; Doc. 46-7 at 2; Doc. 51 at p. 2 ¶ 5, p. 5 ¶ 1. The policy provides that "[Occidental] will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' … caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto.'" Doc. 46 at ¶ 22. The truck that Ravi was driving was not a "covered auto" under the policy. *Id.* at ¶¶ 23-29. However, as required by the Motor Carriers Act, 49 U.S.C. § 13906(f), the policy includes an "MCS-90 Endorsement"; the endorsement is issued to D'Line, and it lists no other party as an insured. Doc. 46 at ¶¶ 32-34; Doc. 46-7 at 10-11; Doc. 51 at p. 6 ¶ 2. The MCS-90 provides, in pertinent part, that

Occidental "agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation … of motor vehicles subject to [certain provisions of the Motor Carrier Act] regardless of whether or not each motor vehicle is specifically described in the policy … ." Doc. 46 at ¶ 35; Doc. 51 at pp. 4-5 ¶¶ 9-10.

On April 21, 2015, Daniel filed a damages action against the Estate and others in Nevada state court, *Dyer v. T Quartercircle Ranch*, Case No. CV15-00735 (Second Judicial District Court, State of Nevada, County of Washoe), alleging that Ravi's negligent operation of the truck caused the accident. Doc. 46 at ¶¶ 15-17; Doc. 51 at p. 6 ¶ 3. Daniel's action does not name D'Line as a defendant. Doc. 46 at ¶ 18; Doc. 51 at p. 6 ¶¶ 4-5. The Estate notified Occidental of the action on May 15, 2015. Doc. 46 at ¶ 19; Doc. 51 at p. 3 ¶ 6. Occidental agreed to defend the Estate, subject to a complete reservation of rights. Doc. 46 at ¶ 20; Doc. 51 at p. 3 ¶ 6. As permitted by Illinois law, *see Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 449-50 (7th Cir. 2015), Occidental later filed this suit to seek a declaration that it need not defend or indemnify D'Line or the Estate in the Nevada action. Doc. 1.

**Discussion**

The parties agree that, but for the MCS-90 Endorsement, the policy would not provide coverage to the Estate for Daniel's lawsuit. Doc. 42 at pp. 5-6, ¶¶ 8-9; Doc. 48 at 5-8. The only dispute concerns whether the endorsement provides that coverage. Before digging into the merits, some background regarding the federal Motor Carriers Act is in order.

"Congress enacted the [Motor Carriers Act], in part, to address [certain] abuses … , including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate

3

commerce." *Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003). To that end, the Act requires motor carriers like D'Line to "file[] with the Secretary [of Transportation] a bond, insurance policy, or other type of security approved by the Secretary" that covers judgments against the carrier for "negligent operation … of motor vehicles," 49 U.S.C. § 13906(a)(1), and empowers the Secretary to "prescribe the appropriate form of endorsement" that carriers must "append[] to policies of insurance and surety bonds" in order to comply with the Act, *id*. § 13906(f). Pursuant to that statutory authority, the Federal Motor Carrier Safety Administration ("FMCSA") promulgated the MCS-90 Endorsement. As noted, the endorsement provides that the insurer "agrees to pay, within the limits of liability described herein, any final judgment recovered *against the insured* for public liability resulting from negligence in the operation … of motor vehicles subject to [certain provisions of the Motor Carrier Act] regardless of whether or not each motor vehicle is specifically described in the policy … ." 49 C.F.R. § 387.15 (emphasis added).

In arguing that the MCS-90 Endorsement does not require it to cover the Estate in Daniel's lawsuit, Occidental focuses on the phrase "against the insured." According to Occidental, because D'Line is the only named insured in the endorsement, the endorsement does not cover claims against any other party, including the Estate. Occidental's position finds support in Regulatory Guidance 58065, issued by the FMCSA in 2005, which provides in relevant part:

> Question: Does the term "insured," as used on Form MCS-90, Endorsement for Motor Carrier Policies of Insurance for Public Liability, or "Principal", as used on Form MCS-82, Motor Carrier Liability Surety Bond, mean the motor carrier named in the endorsement or surety bond?
>
> Guidance: Yes. Under 49 CFR 387.5, "insured and principal" is defined as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." Form MCS-90 and Form MCS-82 are not intended, and do not

> purport, to require a motor carrier's insurer or surety to satisfy a judgment against any party other than the carrier named in the endorsement or surety bond or its fiduciary.

Federal Motor Carrier Safety Administration, *Regulatory Guidance for Forms Used to Establish Minimum Levels of Financial Responsibility for Motor Carriers*, 70 Fed. Reg. 58,065, 58,066 (Oct. 5, 2005). According to the Guidance, then, the MCS-90 Endorsement in this case required Occidental to provide coverage for a (hypothetical) lawsuit by Daniel against D'Line—the motor carrier named in the policy and the endorsement—but not for a suit against any other party, including Ravi or the Estate.

Each court to have considered the scope of the MCS-90 Endorsement after the FMCSA issued the Guidance in 2005 has reached the same conclusion as the Guidance. *See Ooida Risk Retention Grp. v. Williams*, 579 F.3d 469, 477-78 (5th Cir. 2009) (following the Guidance and holding that a driver was not a named insured under the endorsement); *Daniel v. Nat'l Cas. Ins. Co.*, 135 F. Supp. 3d 355, 366 (D. Md. 2015) (same); *McComb v. Nat'l Cas. Co.*, 994 F. Supp. 2d 918, 923-24 (N.D. Ill. 2013) (same); *Forkwar v. Progressive N. Ins. Co.*, 910 F. Supp. 2d 815, 826 (D. Md. 2012) (same); *Ill. Nat'l Ins. Co. v. Temian*, 779 F. Supp. 2d 921, 927-28 (N.D. Ind. 2011) (same); *Sentry Select Ins. Co. v. Thompson*, 665 F. Supp. 2d 561, 566-69 (E.D. Va. 2009) (same); *Armstrong v. U.S. Fire Ins. Co.*, 606 F. Supp. 2d 794, 823-26 (E.D. Tenn. 2009) (same). This court agrees with those decisions.

As an initial matter, those decisions (and the Guidance) adopt the most persuasive reading of the MCS-90 Endorsement. The endorsement, whose text is set forth in the FMCSA regulations, requires the insurer to pay "any final judgment recovered *against the insured*." 49 C.F.R. § 387.15 (emphasis added). The FMCSA regulations define "insured" as "the motor carrier *named* in the policy of insurance … ." 49 C.F.R. § 387.5 (emphasis added). As a textual

matter, it follows that the MCS-90 Endorsement covers only the *motor carrier* that is *named* in the insurance policy, which in this case indisputably is D'Line.

The Estate views things differently. It of course accepts that the endorsement requires the insurer to pay "any final judgment recovered against the insured," 49 C.F.R. § 387.15, and that "insured" is defined as "the motor carrier named in the policy of insurance … ," 49 C.F.R. § 387.5. But the Estate points out that the regulation's definition of "[m]otor carrier" includes "a motor carrier's agent, officer, or representative; an employee responsible for hiring, supervising, training, assigning, or dispatching a driver; or an employee concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories," *ibid*., and argues that this definition covers Ravi (and therefore the Estate) because Ravi "was acting in a representative capacity for D'Line" at the time of the accident. Doc. 53 at 6. According to the Estate, it follows that the policy, by naming D'Line, also named D'Line's agents and representatives, including Ravi. *Ibid*.

The flaw with this interpretation is that it fails to account for the fact that "insured" is defined not simply as "the motor carrier," but rather as "the motor carrier *named in the policy of insurance*." That qualification is essential, for it means that the term "insured" encompasses not everybody and everything falling with the definition of "motor carrier," but only the "motor carrier" that is "named in the policy of insurance." In this case, that is D'Line and D'Line alone.

Moreover, the Estate's interpretation appears to rest on the assumption that, just because a company's agents and representatives qualify as "motor carriers" under the regulation, any reference in the policy or endorsement to the company itself automatically includes its agents and representatives. That assumption is faulty, for even if the Estate were right that Ravi is a "motor carrier" under the regulation, it does not follow that Ravi is the same as "D'Line." That

6

is, regardless of how broadly the regulation defines the phrase "motor carrier," a policy can still single out the motor carrier itself (here, D'Line) by naming it and it alone, and the regulation's definition of "insured" honors that choice.

The Estate cites two pre-Guidance cases, *John Deere Insurance Co. v. Nueva*, 229 F.3d 853 (9th Cir. 2000), and *Adams v. Royal Indemnity Co.*, 99 F.3d 964 (10th Cir. 1999), holding that drivers are covered by the MCS-90 Endorsement. Both decisions incorrectly ignore the regulatory definition of "insured," and instead appeal to the endorsement's purpose—"assuring that the insurer is available as a financially responsible party"—to "modify the policy's definition of an insured." *John Deere Ins.*, 229 F.3d at 859; *see also Adams*, 99 F.3d at 970-71. The policies in both cases (like the policy here, Doc. 46-7 at p. 14 § II.A.1.a-b) included two categories of "insureds": (1) the carrier, for any "covered auto"; and (2) the driver of any "covered auto." *John Deere Ins. Co.*, 229 F.3d at 855; *Adams*, 99 F.3d at 966. Both decisions reasoned that, just as the endorsement expands the first category by requiring insurers to cover judgments against the carrier in cases involving non-covered vehicles, it also expands the second category by requiring insurers to cover judgments against drivers of those vehicles. *See John Deere Ins.*, 229 F.3d at 859; *Adams*, 99 F.3d at 970-71. The problem with that analysis, as the Guidance made clear, is that it ignores 49 C.F.R. § 387.5, which provides that the term "insured" in the endorsement means only "the motor carrier named in the policy of insurance," which is typically (and in this case) the carrier itself and not any of its drivers. For that reason, the Guidance expressly and correctly disavowed *John Deere Ins. Co.* and similar cases insofar as they read the MCS-90 Endorsement to cover drivers. *See* 70 Fed. Reg. 58065, 58066 n.1.

Even if the interpretative question were close, the *Auer* doctrine would require that the dispute be resolved in the Guidance's, and thus in Occidental's, favor. Under the *Auer* doctrine,

7

because the endorsement is "a creature of the [FMCSA's] own regulations, [the FMCSA Guidance's] interpretation of [the endorsement] is … controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted). For the reasons given above, it simply cannot be said that the Guidance's interpretation of the MCS-90 Endorsement is *plainly* erroneous or inconsistent with the above-cited regulations.

In so holding, the court acknowledges that the validity of the *Auer* doctrine has been questioned in recent years. *See United Student Aid Funds, Inc. v. Bible*, 136 S. Ct. 1607 (2016) (Thomas, J., dissenting from denial of certiorari); *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1210-11 (2015) (Alito, J., concurring in part and concurring in the judgment); *id.* at 1211-13 (Scalia, J., concurring in the judgment); *id.* at 1213-25 (Thomas, J., concurring in the judgment). But *Auer* remains good law, *see Zero Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 690 (7th Cir. 2016) (applying *Auer* deference), and therefore the court is obligated to apply it. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree.") (citations omitted); *A Woman's Choice-E. Side Women's Clinic v. Newman*, 305 F.3d 684, 687 (7th Cir. 2002) ("[O]nly an express overruling relieves an inferior court of the duty to follow decisions on the books."). In any event, even putting aside *Auer* and applying traditional interpretive tools, the Guidance still articulates the most persuasive reading of the MCS-90 Endorsement.

## Conclusion

For the foregoing reasons, the Estate's summary judgment motion is denied and Occidental's summary judgment motion is granted. The court declares that Occidental has no duty under its policy with D'Line to defend or indemnify the Estate in *Dyer v. T Quartercircle Ranch*, Case No. CV15-00735 (Second Judicial District Court, State of Nevada, County of Washoe).

December 19, 2017

                                                  United States District Judge